**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBEL GEBRAI, # R-60121,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-751-NJR** |
| | ) | |
| **VIPEN SHAH, CHRISTINE BROWN,** | ) | |
| **ANGELA BURNS, ANGEL RECTOR,** | ) | |
| **and UNKNOWN PARTY NURSES,** | ) | |
| **(Jane Does #1-7),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have been deliberately indifferent to his serious medical condition. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d

1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

Plaintiff's complaint and exhibits total 148 pages. The 43-page statement of claim is found at Doc. 1, pp. 30-36, and Doc. 1-1, pp. 1-36. Upon closer review, it has come to light that three pages of Plaintiff's statement of claim were inadvertently omitted when he filed his pleading. The missing pages would have been found between pages 29-30 of Doc. 1-1; according to Plaintiff's hand-written numbers, they were pages 41, 42, and 43 of the complaint. Despite this problem, the remaining content of the complaint is sufficient for the Court to conclude that some of the claims in this action merit further review. Nonetheless, Plaintiff may wish to re-submit his pleading in its complete form. If Plaintiff chooses to re-submit his complaint, he must

resend the entire complaint to the Court and label it "First Amended Complaint." He shall also serve a copy of the amended complaint on the Defendants who remain in the action. Plaintiff must also re-submit any exhibits he wishes to file, along with the First Amended Complaint. Plaintiff should note, however, that voluminous exhibits are not necessary at this early stage of the case. He will have ample opportunity to submit relevant exhibits later, in connection with motions filed by him or to respond to motions filed by a Defendant.

The following summary is taken from Plaintiff's statement of claim. As background, Plaintiff explains that beginning in October 2014, while he was at another prison, he started to experience soreness, extreme redness, and loss of vision in his left eye (Doc. 1, p. 30). These ailments were not treated at the time, despite Plaintiff's attempts to get help.

Plaintiff was transferred to Pinckneyville on January 23, 2015. During his intake, Plaintiff informed Defendant Nurse Jane Doe #1 of his eye problems, which then included blurry vision and double vision in the left eye. She advised him to put in for nurse sick call, but said that the health care unit was behind on seeing inmates (Doc. 1, pp. 32-33). Plaintiff submitted a sick call slip soon thereafter, but was never called in to see a health care provider about his eye symptoms.

On February 2, 2015, Plaintiff submitted another sick call request, but again was not called in. He next spoke personally to the nurses who made rounds in the segregation unit where Plaintiff was housed and asked for their help. This resulted only in threats from the non-medical staff to issue a ticket against him for harassing the nurses.

On February 20, 2015, Plaintiff wrote to Defendant Brown (Health Care Administrator), asking to be examined by the medical staff. She never replied (Doc. 1, p. 36).

On approximately February 25, 2015, Plaintiff requested an HIV/AIDS test, just so he

could see a medical professional. On March 4, 2015, Defendant Nurse Jane Doe #2 called him in for the test. Plaintiff told her that what he really wanted was medical attention for his vision loss, pain, and blurry/double vision, and that he had never been examined despite his several requests. Defendant Jane Doe #2 told him to continue putting in requests, and eventually he would be seen. When he protested that he was afraid he would lose his vision, she responded that the eye looked fine, other than being a little more red than normal (Doc. 1-1, p. 2).

On March 16, 2015, Plaintiff was called in by Defendant Nurse Jane Doe #3 to receive his HIV/AIDS test results. Plaintiff informed her of his ongoing eye symptoms and told her he had been requesting a sick call visit since January but had not yet been seen. He asked Defendant Doe #3 to examine his eye right then since he was with her, but she told him she could not do that. Instead, he had to wait until he was called in for the eye problem (Doc. 1-1, pp. 3-4). Plaintiff submitted yet another sick call request in March.

On April 15, 2015, Plaintiff was finally called in by Defendant Nurse Jane Doe #4 for his eye condition. By that time, his symptoms included excruciating eye and face pain, as well as migraines and vomiting (Doc. 1-1, p. 5). Defendant #4 told Plaintiff she would put him in to see the doctor, but there would be a wait for that visit. Further, she could not give him any pain medication or treatment that day.

Later in the afternoon of April 15, 2015, Plaintiff saw Defendant Nurse Practitioner Rector. She told him that the prison currently did not have an eye doctor, and she could not give him anything for the pain. She gave him some eye drops and told him not to rub the eye (Doc. 1-1, pp. 8-9). On April 20, 2015, Defendant Rector saw Plaintiff again. At that time, he was still suffering pain, blurry vision, double vision, eye redness, migraines, and vomiting. Defendant Rector told him to keep using the eye drops, but gave him nothing for the pain.

On April 27, 2015, Plaintiff saw Defendant Doctor Shah, who said he would try to refer Plaintiff to another doctor. Approval for the outside consultation was given on April 28, 2015, but Defendant Burns (Medical Director) failed to expedite the appointment.

On May 18, 2015, Plaintiff was taken to see an eye specialist, Dr. Faisal Ahmad, at the Marion Eye Center. Dr. F. Ahmad told Plaintiff about several potential diagnoses for his symptoms, which included a possible cancerous tumor. He told Plaintiff that more tests for his condition would be run at the prison, and that Plaintiff should make sure to keep his follow-up appointment in a few weeks (Doc. 1-1, pp. 13-14).

Plaintiff was not returned to the Marion Eye Center until approximately two months later. In the interim, he was seen twice by prison medical staff, who botched the first test. On May 18, 2015, Defendant Shah refused to give Plaintiff pain medication, advising him to wait for his test results and consultation with Dr. Ahmad. At a visit on a June 1, 2015, Defendant Shah gave Plaintiff a medication for pain.

On July 13, 2015, Plaintiff went to the Marion Eye Center and saw Dr. Omar Ahmad (Doc. 1-1, p. 17). This specialist visit had again been delayed by Defendant Burns. According to the complaint, Plaintiff was diagnosed with "uveitis/iritis elevation of choroidal mass setting of choroidal mass" (Doc. 1-1, p. 17).[1] Dr. O. Ahmad instructed Plaintiff to return in two weeks for another appointment and emphasized the importance of keeping all appointments as his condition could lead to vision loss and blindness.

On August 14, 2015, Plaintiff again saw Defendant Shah, who refused to give Plaintiff any pain medication (Doc. 1-1, p. 21). On September 26, 2015, Plaintiff saw Defendant Nurse Jane Doe #5, after he had requested a sick call visit for his ongoing eye pain. She told him he

---

[1] The medical record submitted by Plaintiff for this visit on July 13, 2015, includes an assessment of: "Uveitis/Iritis OS–chronic, non granulomatous in setting of choroidal mass; Choroidal Mass Elevation OS." It also notes "RTC in 2 wks with Dr. Omar." (Doc. 1-2, p. 9).

would have to sign a money voucher to be charged for a co-payment. Plaintiff apparently refused to sign, arguing that he should not be charged for a pre-existing condition (Doc. 1-1, pp. 23-24).

Despite the instruction from Dr. O. Ahmad to keep all appointments and to return two weeks after July 13, Plaintiff was unable to return to the specialist until September 30, 2015, more than two months after his July visit. He claims that his return visit was approved on July 21, 2015, but Defendant Burns failed to make prompt arrangements for the next appointment (Doc. 1-1, pp. 18-19). At the September 30 visit, Plaintiff was still having vision problems and severe eye and face pain. Dr. O. Ahmad gave Plaintiff an injection and informed him that he had severe inflammation of the conjunctiva, scleritis of the nasal portion of the left eye, intraocular inflammation, problems with the cornea, and a choroidal elevation. The prison medical staff had run the wrong test, and the correct test to rule out lymphoma and melanoma had yet to be performed. Dr. O. Ahmad scheduled Plaintiff to be seen at Washington University in a few weeks.

On October 1, 2015, Plaintiff saw Defendant Shah because he was still having pain. Defendant Shah gave no treatment at that time, saying that he wanted to try something but would consult with the other doctors first (Doc. 1-1, p. 24).

Again, Plaintiff's follow-up outside consultation was delayed. It was approved on October 6, 2015, but Defendant Burns did not schedule him to go at that time (Doc. 1-1, pp. 20-21).

On November 3, 2015, Plaintiff saw Defendant Nurse Jane Doe #6 as a result of his sick call request (Doc. 1-1, pp. 25-26). He asked for pain relievers. Defendant #6 asked him to sign a money voucher. Again, Plaintiff did not want to sign to pay a co-payment for an ongoing condition. The nurse explained that he must sign a voucher any time he goes to nurse sick call.

On November 30, 2015, Plaintiff saw Defendant Jane Doe Nurse #7. At this point, Plaintiff's narrative is interrupted by the omission of the three missing pages (numbered by Plaintiff as pp. 41, 42, and 43) (see Doc. 1-1, pp. 29-30). No further allegations regarding Defendant #7 are included in the pleading as filed.

Page 44 of the complaint (Doc. 1-1, p. 30) picks up with an account of another medical visit to Defendant Shah, who said he was scheduling Plaintiff for the correct test. The date of that encounter is not clear.

On February 8, 2016, Plaintiff was approved to return to the outside hospital, but he could not go due to Defendant Burns's delay (Doc. 1-1, p. 30). The same thing happened with Defendant Burns's handling of a March 14 approval for outside consultation.

Plaintiff seeks a preliminary and permanent injunction to ensure that he is provided with proper testing and care for his eye condition and that he is sent to all medical appointments. He also seeks compensatory and punitive damages (Doc. 1-1, pp. 49-55).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against Defendants Shah, Brown, Burns, Rector, and the Jane Doe Nurses #2, #3, and #4, for deliberate indifference to his medical needs. However, Plaintiff fails to state a claim upon which relief may be granted against the Jane Doe Nurses #1, #5, #6, and #7. Those Defendants shall be dismissed from the action without prejudice.

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm

to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff's persistent eye pain, vision impairment, and other symptoms clearly required medical attention. The complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Pinckneyville medical providers and administrators acted or failed to act with deliberate indifference to a known risk of serious harm.

According to Plaintiff's complaint, some Defendants contributed to the lengthy delays he endured both in obtaining an initial examination of his eye condition, and then in being taken to see the eye specialist in a timely manner. These delays may have worsened his condition and prevented him from receiving timely treatment. Additionally, Plaintiff experienced severe pain from his condition, yet there were several instances where Defendants failed to give him anything to relieve his pain, thus prolonging his suffering. These facts, at this stage, are sufficient to state a deliberate indifference claim against the Defendants involved.

As to the delays in obtaining treatment, Defendant Burns on several occasions allegedly failed to arrange for prompt appointments for Plaintiff to see the specialists at the Marion Eye

Center. Defendant Brown failed to respond when Plaintiff notified her that he had been requesting an initial examination for his eye problem but had not yet been scheduled for a medical visit after a month of waiting. The Jane Doe Nurses #2 and #3 both saw Plaintiff after he requested HIV testing, but did nothing to assist him to get treatment for his eye problem, even after learning of the delay he had already experienced.

Defendant Shah saw Plaintiff several times. It is not clear whether he personally was responsible for contributing to the delays in diagnosing and treating Plaintiff, but the complaint suggests that he was the person who failed to perform the correct diagnostic tests as ordered by the eye specialist. This delay in performing the proper testing does appear to have put off the specialists' ability to properly treat Plaintiff. Further, Plaintiff complains that Defendant Shah failed to give him anything to relieve his pain on several occasions. Additional factual development is appropriate in order to determine whether the testing problems and denial of pain medication amounted to unconstitutional deliberate indifference.

Defendant Rector likewise did not give Plaintiff anything for his pain, although she did provide him with eye drops. Defendant Nurse Jane Doe #4 also did not give Plaintiff any treatment when she examined his eyes.

At this stage, Plaintiff's claims against the above individuals are not subject to dismissal. He must, however, identify the Jane Doe Nurses by name before he can proceed against them.

The remaining Jane Doe Nurses (#1, #5, #6, and #7) shall be dismissed from the action at this time. Jane Doe Nurse #1 saw Plaintiff only on the day he was first admitted to Pinckneyville, and informed him that according to prison procedure, he must put in a sick call request in order to be seen for his eye ailment. Nothing about this routine encounter suggests that Nurse #1 did anything to delay or deny Plaintiff's treatment, so these allegations do not suggest deliberate

indifference on her part.

As for Jane Doe Nurses #5 and #6, Plaintiff faults them for requiring him to sign a payment voucher before he could be seen or treated. The complaint indicates that Plaintiff refused to sign the voucher and thus got no treatment. If this is what happened, then Plaintiff cannot sustain a deliberate indifference claim against these nurses. An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). A prisoner cannot manufacture a deliberate indifference claim by refusing to agree to the assessment of a co-payment and then claiming that the nurse or doctor refused to see him. An inmate who "opt[s] to refuse treatment rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he received treatment, the delay in receiving care was of his own making." *Poole*, 703 F.3d at 1027. Thus, Jane Doe Nurses #5 and #6 shall be dismissed from the action.

Finally, Plaintiff's allegations against Defendant Nurse Jane Doe #7 are not included in the complaint, because they appeared on one or more of the three missing pages (see Doc. 1-1, pp. 29-30). She shall be dismissed from the action as well, for failure to state a claim against her upon which relief may be granted.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

The motion for service of process at government expense (Doc. 5) is **GRANTED in part**

**and DENIED in part.** Service shall be ordered below on those Defendants who remain in the action. No service shall be made on the dismissed Defendants.

<u>**Disposition**</u>

The Unknown Defendant **JANE DOE NURSES #1, #5, #6, and #7** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **SHAH, BROWN, BURNS,** and **RECTOR**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the remaining Unknown Defendants (Jane Doe Nurses #2, #3, and #4) until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file

or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  August 15, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**